Charles Gordon HAZEN, Appellant,

v.

Thomas PASLEY, Sheriff of Phelps County, Rolla, Missouri, Appellee.

Gerald HAZEN, Appellant,

v.

Officer Ralph HENSLEY, Appellee.

Charles HAZEN, Appellant,

v.

Sheriff PASLEY, Sheriff of Phelps County, Rolla, Missouri, Sgt. Aytes, Missouri State Highway Patrol and Ralph Hensley, Missouri State Highway Patrol, Appellees.

No. 84–1941.

United States Court of Appeals, Eighth Circuit.

Submitted April 10, 1985.

Decided July 15, 1985.

Bradley A. Waters, St. Louis, Mo., for appellants.

Ronald D. White, Rolla, Mo., for appellees.

Before LAY, Chief Judge, McMILLIAN, Circuit Judge, and WOODS,* District Judge.

McMILLIAN, Circuit Judge.

Charles Hazen and his son Gerald Hazen appeal from a final judgment entered in the District Court for the Eastern District of Missouri in favor of appellees Ralph E. Hensley, Walter Aytes, and Thomas Pasley in consolidated 42 U.S.C. § 1983 actions alleging excessive force in effecting an arrest and unconstitutional jail conditions and a diversity action alleging wrongful dominion over the Hazens' personal property. For reversal the Hazens argue that the district court erred in finding that Charles Hazen's transfer of property to Pasley was voluntary and in refusing to impose sanctions upon Hensley for his failure to comply with the district court's discovery order. For the reasons discussed below, we reverse and remand with directions.

Aytes and Hensley are Missouri State Highway Patrol officers. On January 25, 1981, they arrested the Hazens in connection with a robbery in St. James, Missouri. At the time of the arrest, Gerald Hazen was driving a stolen pickup truck loaded with welding equipment, tools and other items of personal property. Gerald Hazen alleged that Hensley used excessive force in effecting his arrest.

The pickup truck was returned to its legal owner. Of the $486 in cash seized from the Hazens upon their arrest, all but $21 was returned to the owner of the service station allegedly robbed by them. The tools and miscellaneous items located in the rear of the pickup truck were stored in a garage in Bourbon, Missouri. After processing at a state highway patrol office and at the St. James Police Department, the Hazens were transferred to the Phelps County Jail in Rolla, Missouri, where they were held as pretrial detainees for approximately four months. Pasley is the sheriff of Phelps County.

The Hazens pleaded guilty in state court to a charge of robbery in the second degree and on April 30, 1981, each was sentenced to a term of imprisonment in the Missouri State Penitentiary. Gerald Hazen was transferred to the state prison on May 1, 1981, but Charles Hazen was detained at the Phelps County Jail for several weeks.

On May 22, 1982, Charles Hazen signed a document transferring to Pasley ownership of the tools and miscellaneous items which had been removed from the pickup truck. Charles Hazen alleges that Pasley told him that he would never see his son Gerald alive again if he did not agree to transfer the property to him. On June 25, 1981, Aytes delivered this property to Pasley.

Charles and Gerald Hazen filed a diversity action [1] against Pasley, Aytes and Hensley seeking damages for the wrongful taking of personal property. They also filed a complaint against Pasley seeking damages because of the constitutionally impermissible conditions of confinement at the Phelps County Jail. Gerald Hazen filed a complaint against Hensley seeking damages

---

* The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The Hazens' diversity action alleges a wrongful taking of personal property by state officials. The Hazens at the time of their arrest were residents of Texas; Aytes, Hensley, and Pasley were residents of Missouri. We initially thought that the Hazens' claim was a civil rights action brought pursuant to 42 U.S.C. § 1983 because of the factual similarity between the Hazens' state law tort claim and a typical § 1983 claim and some of the arguments made by the parties. The Hazens, however, have proceeded on a state law tort theory and the district court decided their claim on this theory.

for the excessive use of force allegedly employed by Hensley at the time of Gerald Hazen's arrest. These three cases were consolidated for hearing and trial by the district court.

The district court found that the conditions of confinement, as to food and clothing,[2] at the Phelps County Jail were unconstitutional and rendered judgment against Pasley. Gerald and Charles Hazen were each awarded damages of $100. The district court found in favor of Pasley, Aytes and Hensley on the diversity claim that Charles Hazen had been coerced into transferring his property to Pasley. The district court also found in favor of Hensley on Gerald Hazen's claim that Hensley used excessive force during the arrest; the district court denied Gerald Hazen's motion for sanctions against Hensley for his failure to comply with the discovery order. This appeal followed.

Two of the three issues on appeal in this case relate to the diversity claim of wrongful dominion over the Hazens' personal property. The Hazens argue first that the transfer of the property to Pasley was involuntary and the product of undue influence and, second, that the transfer was void because such a transfer violated public policy. The Hazens specifically argue that the district court should have held as a matter of public policy that the transfer was void because of the appearance of impropriety and the possibility of abuse inherent in such transactions. Pasley, Aytes and Hensley argue that this court should

not decide this case on public policy grounds because this issue should be determined by the state legislature.

■ In a diversity case, a federal court "is not to formulate the legal mind of the state, but merely to ascertain and apply it." *Stratioti v. Bick*, 704 F.2d 1052, 1054 (8th Cir.1983) (citations omitted). Where neither the legislature nor the highest court in a state has addressed an issue, the federal court must determine what the highest state court would probably hold were it called upon to decide the issue. Federal appellate courts give special weight to a district judge's interpretation of state law in diversity cases. *Nelson by Wharton v. Missouri Department of Family Services*, 706 F.2d 276, 278 (8th Cir.1983). Nevertheless, an appellate court is not bound by the district court's interpretation of state law and must reverse if it finds that the district court has not correctly ascertained and applied local law. *Red Lobster Inns of America, Inc. v. Lawyers Title Insurance Corp.*, 656 F.2d 381, 387 (8th Cir.1981).

■ The parties have not directed this court to any Missouri cases or cases from other jurisdictions which address the precise issue presented by this case. Neither have we found such cases in our research. We believe that the Missouri Supreme Court, considering the evidence which was before the district court, would hold that transfers of property by a prisoner in the custody of a law enforcement officer to that law enforcement officer violate public

2. The district court made the following findings of fact and conclusions of law concerning the clothing and food at the Phelps County Jail:

> During the time [approximately four months] the plaintiffs [Gerald and Charles Hazen] were confined in the Phelps County Jail as pretrial detainees, they were not provided inmate clothing....
>
> ... Although the practice of requiring detainees to wash and dry their own clothing is not unconstitutional per se, the Court finds that requiring detainees to wait in varying degrees of undress while their clothes are drying is impermissible. Such a practice is not reasonably related to a legitimate governmental objective. It can be avoided at relatively low expense.

> The plaintiffs' constitutional rights *were* violated by defendant Pasley's failure to provide them with an adequate diet.... Although the difference between the number of calories provided and the number of calories which ideally should have been provided may be small, the Court finds that this caloric deficiency produced notable weight loss and mildly diminished health to the plaintiffs over the course of their confinement....
>
> ... Still, the jail conditions and the deprivations established by the plaintiffs do not rise to the level of such deplorable conditions as might otherwise justify an award of substantial compensatory damages.

*Hazen v. Pasley*, Nos. 81–1069–C, 81–1460–C, 82–0158–C, slip op. at 13–14 (E.D.Mo.1984) (emphasis in original).

policy. There was uncontradicted evidence that Missouri law enforcement agencies have express policies prohibiting officers from accepting gifts from prisoners. The Missouri State Highway Patrol and the Phelps County Sheriff's Office have such policies. These policies are established both to prevent law enforcement officials from being influenced by such gifts and to protect prisoners from pressure to make gifts.[3]

We also note that the district court, although deciding the case against the Hazens, disapproved of this sort of conduct by law enforcement officers: "Although Defendant Pasley should not have accepted these items, and the court frowns upon his acceptance, under the facts of this case plaintiff Charles G. Hazen was not coerced into transferring his property. Fiduciary officers would do well never to accept any property from wards in their care." *Hazen v. Pasley*, Nos. 81–1069–C, 81–1460–C, 82–0158–C, slip op. at 5.

Gerald Hazen next argues that the district court erred in refusing to impose sanctions on Hensley because of his failure to comply with the district court's discovery order. He further argues that the district court made no findings of fact concerning the "personal difficulties" which the district court cited as the reason for Hensley's noncompliance with the discovery order.

Fed.R.Civ.P. 37(d) authorizes a district court to impose various sanctions, including entry of a default judgment, on a party failing to appear for deposition or failing to respond to interrogatories. The district court is afforded great latitude in imposing sanctions for failure to comply with discovery orders; the court of appeals will not reverse the district court in the absence of a clear abuse of discretion. *Phil Crowley Steel Corp. v. Macomber, Inc.*, 601 F.2d 342, 344 (8th Cir.1979); *Voegeli v. Lewis*, 568 F.2d 89, 96 (8th Cir. 1977); *Fox v. Studebaker-Worthington, Inc.*, 516 F.2d 989, 993 (8th Cir.1975). Although the district court's finding of "personal difficulties" is not a model of clarity and specificity, we hold that the district court did not abuse its discretion in denying sanctions against Hensley based on this finding.

Accordingly, the judgment of the district court on the diversity claim is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.

---

**3.** There is a real danger that a law enforcement official would be influenced by a gift from a prisoner. Whether motivated by appreciation or the hope of receiving gifts, the law enforcement officer's attitude toward and treatment of the prisoner-donor is likely to change. Although there may be a small number of persons who can maintain strict impartiality and objectivity after receiving a gift, we are persuaded that the overwhelming majority of persons, including law enforcement officers, will be influenced by the receipt of gifts, although they may sincerely believe that they are not influenced. In addition, we are concerned that rich and poor prisoners will be treated differently. A prisoner with resources and the capacity to make gifts may be treated more favorably than the less well-endowed person.

Policies prohibiting gifts by prisoners to law enforcement officers, particularly jailers, also protect prisoners. The jailer has absolute control over all facets of a prisoner's life, *e.g.*, food, water, sleep, exercise, and visitors. This complete dependence of the prisoner on the jailer and the nature of the custodial settings make it likely that subtle pressure will be exerted on prisoners to make gifts to secure more favorable treatment. A prisoner may also be directly coerced into making a "gift" to a jailer.

A number of other reasons exist for such policies. The distinction between gifts and bribes becomes blurred and prosecution of bribery more difficult when law enforcement officials can accept "gifts" from prisoners. Moreover, such gifts are necessarily tainted by the appearance of impropriety; the public will view law enforcement officials as exploiting their superior position and taking advantage of those in their custody. Lastly, resources of law enforcement agencies and the courts will be utilized in determining if a transfer is voluntary, the result of undue influence, or coerced. While all these reasons militate against allowing law enforcement officials to accept gifts from prisoners, we can think of no public good which would be served by permitting these officials to accept gifts.